UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:22CR-00003-JHM**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

V.

**CEDRIC SWANAGAN**                                                                 **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Cedric Swanagan, to suppress and for a hearing pursuant to *Franks v. Delaware*. [DN 129]. The United States responded. [DN 138]. Swanagan did not file a reply. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

On April 5, 2022, the grand jury returned a Second Superseding Indictment against Cedric Swanagan and 12 other individuals—Prince Northington, Barri Brown, Andrew Derington, Trenton Brown, Ryan Bean, Christopher Vasquez, Brittany Swihart, Christopher Williams, Avery Green, Nicole Toliver, Courtland Reed, and Birdie Lawless. As it pertains to Swanagan, the Second Superseding Indictment alleges that between September 2021 and continuing to April 4, 2022, Swanagan, Toliver, Reed, and Lawless, knowingly and intentionally conspired with each other and others to possess with the intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii). [DN 15 at 2].

Beginning in September 2021, law enforcement officers with the Evansville Resident Office ("ERO") of the United States Drug Enforcement Agency ("DEA") and the Owensboro Police Department ("OPD") began investigating an alleged drug trafficking organization operating

around Owensboro, Kentucky. As part of the investigation into this case, law enforcement conducted controlled purchases of drugs from members of the drug trafficking organization (hereinafter "members") and surveillance, seized multiple pounds of crystal methamphetamine, executed various cell site location warrants and social media warrants, and conducted interviews with members.

On October 18, 2021, Task Force Officer James J. Budde ("Officer Budde") obtained a warrant to monitor the geographical cell site location for a phone being utilized by Marla Huff. On October 20, 2021, law enforcement observed Huff commit a traffic violation. Law enforcement stopped Huff and utilized a narcotic detection canine around the vehicle. The canine alerted to the presence of controlled substances. A search of Huff's vehicle revealed 278 grams of methamphetamine and currency, and law enforcement seized Huff's cell phone. *See* [DN 140-1, ¶¶ 24, 25, 26, 27, 28].

On October 26, 2021, Officer Budde obtained a warrant to search Huff's cell phone. Officer Budde represents that he observed multiple communications regarding Huff both obtaining and supplying methamphetamine. For example, law enforcement reviewed (1) Facebook messages between Huff and Swanagan which utilized a "water emoji" and (2) Facebook and text messages between Huff and co-defendant Prince Northington. [*Id*. at ¶¶ 29, 30]. In December 2021, law enforcement listened to a number of recorded jail phone calls between inmate Matthew Abney and co-defendant Birdie Lawless. In those calls, the parties discussed Abney owing money to Lawless, and Lawless needing more "water." [*Id*. at ¶¶ 49–55]. On December 30, 2021, law enforcement utilized a confidential source to make a controlled purchase of eight ounces of methamphetamine from Northington.

Based on all of this information, Officer Budde submitted an affidavit dated January 25,

2022, seeking authorization to intercept wire and electronic communications between two phones utilized by Northington (Target Telephones 1 and 2) and a phone utilized by Lawless (Target Telephone 3). [DN 129-2, *see* Affidavit I]. A United States District Judge issued the warrant. On February 7, 2022, Officer Budde submitted a new affidavit in support of an application for an order authorizing the interception of communications to and from Swanagan's phone (Target Telephone 4). [DN 140-1, *see* Affidavit II]. The affidavit included the evidence described in Affidavit I, but also detailed the investigation following the initial wiretap. Based on this affidavit (Affidavit II), the District Judge issued the wiretap authorizing the interception of the communications to and from Swanagan's phone. [*Id.*].

Swanagan now files a motion to suppress and for a hearing pursuant to *Franks v. Delaware*. Swanagan files as an attachment and cites in his motion only the affidavit of Officer Budde dated January 25, 2022 (Affidavit I), which was filed in support of the wiretap of the phones utilized by Northington and Lawless. The United States responds. [DN 138]. Swanagan did not file a reply.

## II. LAW

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "When probable cause is required, it is an obvious assumption that there will be a truthful showing of probable cause." *United States v. Witherspoon*, No. 1:09-CR-00041-TBR, 2010 WL 724663, *2 (W.D. Ky. Feb. 25, 2010) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). In challenging the veracity of statements contained in the affidavit, the defendant must prove by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. "If this is established by the defendant, then the false material must be set aside in determining whether the remaining content is sufficient

to establish probable cause." *Witherspoon*, 2010 WL 724663, *2 (citing *Franks*, 438 U.S. at 156). In the case where the remaining material fails to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

To be entitled to a *Franks* hearing, a defendant must (1) "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) (citation and internal quotation marks omitted). "The same standard applies to warrants for wiretaps." *United States v. Sims*, 508 F. App'x 452, 458 (6th Cir. 2012); *United States v. Cooper*, 893 F.3d 840, 844 (6th Cir. 2018). The Sixth Circuit's "well-settled framework for *Franks* hearings requires a defendant to 'point to *specific* false statements' and then 'accompany his allegations with an offer of proof.'" *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (quoting *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990)).

Further, while alleged omissions on the part of the affiant are not excluded from consideration under *Franks*, "to be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have undermined the showing of probable cause." *United States v. Carpenter*, 360 F.3d 591, 596–97 (6th Cir. 2004). This does not mean, however, that officers must divulge every piece of exculpatory evidence in the affidavit. *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) ("To interweave the *Brady* due process rationale into warrant application proceedings and to require that all potentially exculpatory evidence be included in an affidavit, places an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in

the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded.").

### III. DISCUSSION

Swanagan argues a *Franks* hearing is warranted because the affidavit in support of the application for the wiretap presented to the District Judge in this case is replete with materially false and/or misleading statements and/or omissions, submitted intentionally or in reckless disregard for the truth. Specifically, Swanagan contends that the communications in the Huff-Swanagan Facebook conversations are innocent in nature, do not discuss any type of narcotic activity, and do not support Officer Budde's "reckless attempt to characterize those communications as incriminating." [DN 129 at 7]. Swanagan further argues that Officer Budde's conclusory interpretation of a "water emoji" is false and misleading because the "water emoji" is synonymous with sexual activity not methamphetamine. [*Id*.]. Swanagan contends that Officer Budde's flawed interpretation served as a material basis for the grant of the wiretap at issue in this case.

After a review of the affidavits and the arguments of the parties, the Court finds that Swanagan failed to satisfy the requirements for a *Franks* hearing.

### A. Facebook Messages between Huff and Swanagan—Meaning of Emojis

As discussed above, Swanagan contends that the communications in the Huff-Swanagan Facebook conversations are innocent in nature, do not discuss any type of narcotic activity, and do not support Officer Budde's "reckless attempt to characterize those communications as incriminating." [DN 129 at 7].

Officer Budde's affidavit provides the following information with respect to the Facebook messages between Huff and Swanagan:

> 30) The Facebook messages between HUFF and SWANAGAN . . . include the following:
>
> > a) On September 27, 2021, HUFF sent a Facebook message to SWANAGAN that reads, "Imma need ya" to which SWANAGAN replied with a thumbs up emoji.
> >
> > > i) Based on your Affiant's training, experience, and knowledge of this investigation, when HUFF tells SWANAGAN, "Imma need ya" on September 27, 2021, she is telling SWANAGAN that she needs to acquire crystal methamphetamine from SWANAGAN.
> >
> > b) On October 3, 2021, HUFF sent a Facebook message to SWANAGAN that reads, "I'm n town" to which SWANAGAN replied, "ite".
> >
> > > i) Based on your Affiant's training, experience, and knowledge when SWANAGAN tells HUFF that he is in town he is letting her know that since he is in town HUFF can purchase crystal methamphetamine from him.
> >
> > c) On October 11, 2021, SWANAGAN sent a Facebook message to HUFF that reads, "pull up need sum [water emoji] plus i got yu on the one tip" and HUFF replied, "I'm not mobile atm dough boi otw to get me tho" followed by a message that reads, "I'm tryna make sum cash boo" to which SWANAGAN replied, "ite" followed by a message that reads, "i see yu gta make et money back huh" and HUFF responds, "Swear".
>
> 27) Based on your Affiant's training, experience and knowledge of this investigation, these messages between HUFF and SWANAGAN indicate HUFF is utilizing SWANAGAN as a source of crystal methamphetamine supply. The crystal methamphetamine is indicated by the use of the water emoji as crystal methamphetamine is commonly referred to as water. When HUFF says that she "need[s]" SWANAGAN that is her indicating that she is in need of more controlled substances from her source of supply.

[DN 129-2 at ¶¶ 26, 27 (Aff. I); DN 140-1 at ¶¶ 30, 31 (Aff. II)].[1]

The Sixth Circuit's "well-settled framework for *Franks* hearings requires a defendant to point to *specific* false statements and then accompany his allegations with an offer of proof." *Green*, 572 F. App'x at 442 (citation and quotation marks omitted) (emphasis in original). Swanagan maintains that the false statements are Officer Budde's interpretation of the messages

---

[1] While the affidavits are sealed, the parties have discussed this section in detail in non-sealed pleadings.

to refer to drug distribution. As "offers of proof" to support his motion for a *Franks* hearing, Swanagan argues that there is nothing suspicious about the Facebook communication—in actuality, Huff and Swanagan were in a romantic relationship, and Huff was letting Swanagan know that she was wanting to have sex with him. Swanagan maintains that no support exists for Officer Budde's conclusion that the "water emoji" is synonymous with crystal methamphetamine. Swanagan contends that that the "water emoji" references sexual relations and that any reference to crystal methamphetamine as "water" cannot be found in the common urban vernacular. In further support of his argument, Swanagan points to other messages on Huff's phone between Huff and co-defendant Northington that are related to drug trafficking activity, but neither individuals utilize the "water emoji." Instead, Swanagan contends that Officer Budde formed false conclusions with regard to material facts intentionally or with reckless disregard for the truth warranting a *Franks* hearing. The Court disagrees.

In addition to his discussion regarding the Huff-Swanagan Facebook messages, Officer Budde included in both Affidavits I and II that at least one other co-defendant in this case utilized the term water to mean methamphetamine. Specifically, the December 2021 jail calls between Abney and co-defendant Lawless reflect the utilization of the term water by Abney, and Lawless's response recognizing the mutual understanding of the term. *See* [140-1 at ¶ 50]. Additionally, while water may reference sexual relations, case law also confirms that water can also refer to methamphetamine in drug trafficking communications. *See United States v. Valdez*, 723 F. App'x 624, 627 n.4 (10th Cir. 2018).

Accordingly, the Court concludes that Swanagan failed to produce a substantial preliminary showing that Officer Budde made false statements in the affidavits or deliberately or recklessly omitted information related to Swanagan from the affidavits. *See United States v.*

7

*Bateman*, 945 F.3d 997, 1010 (6th Cir. 2019).

### B. Facebook Messages between Huff and Swanagan—Probable Cause

Furthermore, Swanagan failed to make a showing that the alleged false statements are necessary to the finding of probable cause to secure a wiretap of Swanagan's cell phone. *Graham*, 275 F.3d at 505. In addition to his reliance on the Facebook messages between Huff and Swanagan, Officer Budde also included other text messages that occurred in January of 2022 between Target Telephone 3 used by Lawless and Target Telephone 4 used by Swanagan to support his affidavit (Affidavit II). These text messages reflect a supplier/distributor relationship between Swanagan and Lawless, with Swanagan supplying drugs and Lawless paying Swanagan for drugs fronted. [DN 140-1, ¶¶56, 58, 60, 62]. Additionally, the affidavit contained detailed analyses of the toll records associated with Swanagan's phone, including recent calls and text messages with a phone associated with a known drug distributor in Owensboro and with co-defendant Williams. [*Id*. at ¶¶ 64, 65]. Accordingly, even if Swanagan could make a substantial preliminary showing that Officer Budde's interpretation of the Facebook messages between Huff and Swanagan were false, these Facebook messages were not necessary to the finding of probable cause given the other text messages and toll records between Swanagan and others. In other words, even if omitted, sufficient probable cause remained in the wiretap affidavit to believe that Swanagan's telephone was being used in an illegal drug operation.

Furthermore, in as much as Swanagan has standing to contest the wiretap application and affidavit with respect to Northington and Lawless [DN 129-1, Affidavit I], sufficient probable cause existed to support the wiretap of their phones (Target Telephones 1, 2, and 3) in light of the drug trafficking conversations between Northington and Huff, the controlled purchases of methamphetamine from Northington, and Lawless and Abney's jail telephone calls.

As such, the Court finds that even if the Huff-Swanagan Facebook messages were omitted from the affidavits, sufficient probable cause existed to support the wiretap applications for the phones.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Cedric Swanagan, to suppress and for a hearing pursuant to *Franks v. Delaware* [DN 129] is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

January 26, 2023

cc: counsel of record